**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| CHRISTIAN EVANS, JASON HARRIS, JR., and DANIEL BANKS, Individually and on Behalf of All Other Persons Similarly Situated, | ) |
| Plaintiffs, | ) **FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT** |
| v. | ) |
| RAILPROS FIELD SERVICES, INC., | ) |
| Defendant. | ) Civil Action No. 3:26-cv-01965-l-BW |

## INTRODUCTION

Plaintiffs Christian Evans ("Evans"), Jason Harris, Jr. ("Harris"), and Daniel Banks (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, through counsel, pursuant to Fed. R. Civ. P. 15(a)(1) and (c) adding as a named Plaintiff a class representative for the California state wage law claims and California class action claims pled in the original Complaint ("Complaint"), file this First Amended Collective and Class Action Complaint (the "FAC") against Defendant RailPros Field Services, Inc. ("RPFSI") ("Defendant"), seeking all available relief under (i) the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et. seq*., as applicable, as pled herein; (ii) the applicable Illinois, California, and other state wage and hour laws for all states in which Defendant employed and paid its workers overtime premiums for hours paid by prevailing wage rates under federal, state or local prevailing wage laws within the relevant period ("state laws") in the manner pled herein; (iii) the applicable Illinois wage and hour, prevailing wage, conversion and unjust enrichment

laws as to the kick-back payment claims pled herein. The following allegations are based on Plaintiffs' personal knowledge and belief and upon information made known to Plaintiffs.

## NATURE OF THE ACTION

1. This action seeks to recover unpaid overtime compensation and all available damages, penalties and interest related thereto under the FLSA for Plaintiffs and other current and former prevailing wage-paid non-exempt workers, employed by Defendant working on a contracted public works job requiring payment of (and for which they were paid) prevailing wages under federal, state or local laws ("prevailing wage-paid"), for which Defendant paid directly to such employees "cash in lieu" payments in lieu of Health & Welfare, Pension, Training, or other categories of prevailing wage fringe benefits, from three years before the date the Complaint was filed until entry of judgment in this matter (the "Relevant Time Period") who worked more than 40 hours in any given workweek for which they received such "cash in lieu" payments (collectively "Workers"), and who join this case by opting in to, and thereby join in asserting their, FLSA and individual supplemental state law claims (the "Collective" or "Collective Action Members").

2. This action also seeks to recover unpaid overtime compensation and all available damages, penalties and interest related thereto under the FLSA for Plaintiffs and other current and former prevailing wage-paid workers, employed by a Defendant working on a contracted public works job requiring payment of federal, state or local law prevailing wages, for which such employees were required by their Manager of RWIC Operations and/or RWIC Supervisor of Operations to kick back (by payments made directly to such Manager or Supervisor, or his designated fund recipients) substantial portions of their wages received (including overtime wages paid) in order to keep their jobs and retain their prevailing wage-paid job assignments, for

the Relevant Time Period who worked more than 40 hours in any given workweek for which they received overtime wages, and who join this case by opting in to, and thereby join in asserting their, FLSA and individual supplemental state law claims (the "Kick-Back Sub-Collective" or "Sub-Collective Action Members").

3. This action also seeks to recover unpaid overtime compensation and all available damages, penalties, interest, and derivative claims related thereto under California law, for Plaintiff Banks and other current and former prevailing wage-paid non-exempt workers, employed by Defendant working on a contracted public works job within the state of California requiring payment of federal, state or local prevailing wages ("California Work"), for which Defendant paid directly to such employees "cash in lieu" payments in lieu of Health & Welfare, Pension, Training, or other categories of prevailing wage fringe benefits ("fringe benefits"), for the four year applicable statute of limitations period preceding the filing date of the Complaint (the "California Class Period") under the applicable California Labor Code and/or applicable wage orders who worked more than 40 hours, or in excess of such other maximum hours requiring payment of overtime premiums under California law, in any given workweek during the California Class Period (collectively the "California Class"), pursuant to Fed. R. Civ. P. 23 and by exercise of supplemental jurisdiction over the California state law claims of all Collective or Sub-Collective Action Members who opt-in to join the case and its federal and supplemental state law claims.

4. This action also seeks to recover unpaid overtime compensation and all available damages, penalties, interest, and derivative claims related thereto under any other state laws, for Plaintiffs and other current and former prevailing wage-paid non-exempt workers, employed by Defendant working on a contracted public works job requiring payment of federal, state or local

prevailing wages, for which Defendant paid directly to such employees "cash in lieu" payments in lieu of Health & Welfare, Pension, Training, or other categories of prevailing wage fringe benefits ("fringe benefits"), for the maximum applicable statute of limitations period (the "Relevant State Law Period") under each such applicable state law who worked more than 40 hours, or in excess of such other maximum hours requiring payment of overtime premiums under applicable law, in any given workweek during the Relevant State Law Period (collectively "State Law Workers"), pursuant to Fed. R. Civ. P. 23 (the "Classes") and by exercise of supplemental jurisdiction over the applicable state law claims of all Collective or Sub-Collective Action Members who opt-in to join the case and its federal and supplemental state law claims.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

6. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this District within the Dallas Division, incorporated in Texas, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

7. Defendant maintains its corporate headquarters in this district, issues payroll from its corporate headquarters in this district, and regularly conducts business in this district.

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

9. This Court is empowered to issue injunctive relief allowed by the state laws as applicable, pursuant to 28 U.S.C. § 1331, and Fed. R. Civ. P. 65.

**THE PARTIES**

10. Plaintiff Evans is an individual with his principal address in Fitzgerald, Georgia.

11. Plaintiff Harris is an individual with his principal address in Memphis, Tennessee.

12. Plaintiff Banks is an individual with his principal address in Olympia, Washington.

13. Plaintiffs Evans and Harris were employed by and permitted to work for Defendant on its contracted public works jobs in Illinois during the Relevant Time Period, including the CPKC projects under Defendant's contract with the prime contractor, Walsh Construction.

14. Plaintiff Banks was employed by and permitted to work for Defendant on its contracted public works jobs including certain of such jobs in California during the California Class Period, and was an employee as defined in the statutes at issue in the California claims.

15. Plaintiffs have consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and copies of their consents were previously filed with the Court.

16. Defendant is a corporation organized, incorporated, and existing under the laws of Texas, with its principal office (as filed with the Texas Secretary of State's Office) at either 1320 Greenway Drive, Irving, Texas 75038, or 5605 N MacArthur Blvd, Suite 650, Irving, Texas, both of which addresses are located within Dallas County.

17. At all times relevant herein, Defendant has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and the applicable state laws.

18. At all times relevant herein, Defendant was Plaintiffs' and the Collective, Sub-Collective, and State Law Workers' employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and the applicable state laws.

19. At all times relevant herein, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20. At all times relevant herein, Defendant has been an enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA because it has had employees engaged in commerce, transportation of goods in interstate commerce, and in handling or otherwise working on goods or materials that have moved in or were produced for commerce by any person, under 29 U.S.C. § 203(s)(1). Further, Defendant has had (and has) a gross volume of sales, made or done business in an amount of at least $500,000 annually during the years within Relevant Time Period.

21. During the Relevant Time Period, Plaintiffs and all Workers were engaged in commerce as required by 29 U.S.C. §§ 206-207.

22. Defendant issued paychecks to the Plaintiffs and all Workers during their employment.

23. Defendant suffered, permitted or directed the work of Plaintiffs and all Workers, and benefited from work performed by Plaintiffs and all Workers.

24. Pursuant to Defendant's payroll policies, patterns, and practices, Defendant did not pay Plaintiffs and the Workers overtime wages for prevailing wage-paid hours triggering overtime premium payment obligations under the applicable state or federal law at a rate of time-and-a-half (or, as applicable, double) the prevailing wage hourly rate (inclusive of cash-in-lieu payment amounts) for overtime hours worked.

25. Pursuant to Defendant's pay practice, as a result of Defendant's managing agents (Manager of RWIC Operations, and RWIC Supervisor of Operations) requiring Sub-Collective Members to pay kick-backs to such managing agents necessarily resulting in not receiving some

or all overtime wages free and clear, Defendant did not pay Plaintiffs and the Sub-Collective Members all overtime wages owed.

## FACTUAL ALLEGATIONS

26. Defendant employed Plaintiffs and the putative Collective and Class Members and Sub-Collective Members as Workers, including but not limited to as "Railroad Worker in Charge" ("RWIC"), Flaggers, "Employee in Charge" ("EIC"), and all other job titles under which prevailing wage-paid individuals worked for Defendant.

27. Defendant maintained control, oversight, and discretion over the operation of its contracted work on public works projects, including its management, pay and employment practices with respect to Plaintiffs and the putative Collective and Class Members and Sub-Collective Members.

28. Plaintiffs and the putative Collective and Class Members and Sub-Collective Members performed work as Workers that was integrated into the normal course of Defendant's business.

29. Consistent with Defendant's policy, pattern and/or practice, Plaintiffs and the putative Collective, Sub-Collective Members, and Class Members as Workers worked in excess of 40 hours per workweek, and/or hours triggering overtime premium payment obligations under the state laws, in one of more workweeks within the Relevant Time Period for their employer's benefit.

30. Defendant assigned the work performed by Plaintiffs and the putative Collective, Sub-Collective Members, and Class Members as Workers, including through its acting Manager of RWIC Operations, and/or its RWIC Supervisor of Operations.

31. During the Relevant Time Period, Defendant employed prevailing wage-paid Workers for work on public works projects in Illinois,[1] California, and in other states.

32. During the Relevant Time Period, Defendant paid its Workers prevailing wages for work on public works projects for which federal, state or local prevailing wage laws required payment of prevailing wages, not only in Illinois but in all other states in which Defendant employed prevailing wage-paid Workers, including but not limited to California.

33. During the Relevant Time Period, Defendant paid its prevailing wage-paid Workers by a centralized payroll system.

**FLSA and State Law Factual Allegations: Regular Rate Violations**

34. During the Relevant Time Period, Defendant paid its prevailing wage-paid Workers for hours worked on public works projects for which federal, state or local prevailing wage laws required payment of prevailing wages, not only in Illinois but in all other states in which Defendant employed prevailing wage-paid Workers, including but not limited to California,[2] overtime premiums reflected on payroll as "OT" or overtime double-time premiums reflected on payroll as "DT".

---

[1] These Illinois projects/contracts include those reported by Defendant's certified payroll transcript submissions accessible via public records search at https://webapps.illinois.gov/DOL/PayrollCertification/public/home, which include, but are not limited to, project numbers/project names (as listed on Defendant's certified payroll transcripts for prevailing wages submitted to the State of Illinois) including No. I-21-4732, ISTHA-1-16-4669, Illinois Tollway Contract I-20-4533 - Judlau C211, Illinois Tollway Contract I-20-4533 - Judlau C212, Illinois Tollway Contract I-21-4737 - Judlau C212, I-21-4736, ISTHA I-24-4738, 1080, ISTHA I-20-4727, Illinois Tollway Contract I-21-4737 - Judlau C212, Illinois Tollway Contract I-17-4339 - Judlau Job Number C203, 11-187-3F, 24184, I-490 Bridge Construction (Franklin Ave to Irving Park Rd), ISTHA I-16-4669, and Western Access Tollway (I-490) I-18-4704.

[2] Those California projects/contracts include those reported by Defendant's certified payroll transcript submissions accessible via public records search at https://services.dir.ca.gov/pw?id=ecpr_public_search, which include, but are not limited to, project numbers/project names (as listed on Defendant's certified payroll transcripts for prevailing wages submitted to the State of California's Department of Industrial Relations) including DIR Project IDs 158939, 334787, 400106, 414839, 416865, 430460, 441818, 446470, 456920, 461146, 469572, 475731, 477111, 498288, 500084, 523280, 20240535312, 20240545151, 20240546828, 20240547503, 20240552311, 20240552803, 20240554469, 20240556165, 20240557368, 20240558982, 20250561162, 20250563297, 20250563421, 20250565665, 20250574098, 20250577885, 20250582815, 20250583369, 20250584102, 20250588595, 20250598119, 20250605226, 20250606553, 20250607810, 20250609982, 20250610948, 20250613354, 20260614641, 20260616330, 20260625922, and 20260631550.

35. During the Relevant Time Period, when Defendant paid its prevailing wage-paid Workers for hours worked on public works projects for which federal, state or local prevailing wage laws required payment of prevailing wages, not only in Illinois but in all other states in which Defendant employed prevailing wage-paid Workers, including but not limited to California, overtime premiums reflected on payroll as "OT" or overtime double-time premiums reflected on payroll as "DT," it did not include the cash amounts paid directly to the Workers for fringe benefits required by prevailing wage laws in the calculation of the regular rate upon which overtime or double-time premiums required by law were paid, resulting in payment of less than time-and-a-half or double-time (as applicable) of the amount of base wages and "cash in lieu" direct fringe benefit prevailing wage payments paid directly to Workers.

36. As an example, for payroll date 12/28/2025 – 1/3/2026, Defendant submitted its certified payroll transcript to the State of Illinois as required by Illinois prevailing wage laws, which included reporting the following payroll payment:

**Work Classification**

| Name | | Mon | Tue | Wed | Thr | Fri | Sat | Sun | Straight Hrs | Tot OT Hrs | Dub Tim Hrs | Hourly Wage | OT Wage Rate | Dbl Tim Wage | Gross | Net | No Work |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [redacted] | P | 8.00 | 13.50 | 10.00 | 0.00 | 9.00 | 0.00 | 0.00 | 32.00 | 8.50 | 0.00 | 88.34 | 114.05 | 0.00 | 3796.22 | 3945.94 | |
| | NP | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Pension | | 0.00 | | Health | | 0.00 | | Vacation | 0.00 | | Training | 0.00 | | | | |
| [redacted] | P | 11.50 | 13.50 | 11.00 | 0.00 | 11.00 | 8.00 | 8.00 | 32.00 | 23.00 | 8.00 | 88.34 | 114.05 | 139.74 | 6567.72 | 7258.44 | |
| | NP | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| | Pension | | 0.00 | | Health | | 0.00 | | Vacation | 0.00 | | Training | 0.00 | | | | |

37. The second entry reflects the pay statement received by Plaintiff Evans, which showed the following payment made to Plaintiff Evans for that pay period, and which is the same $7258.44 payment reported in the certified payroll transcript filed with the State of Illinois shown in the preceding paragraph:

**Earnings Statement** **EVANS, CHRISTIAN WAYNE**

| | | | |
|---|---|---|---|
| Pay Date: | 01/09/2026 | Company: 0GL64 - RAILPROS FIELD SERVICES INC | Emp #: A275 |
| Period Start: | 12/28/2025 | 5605 N MACARTHUR BLVD | Dept: CPKCNORTH - RWIC C |
| Period End: | 01/03/2026 | IRVING TX 75038 (682) 223-0434 | PKC North |
| | | | Pay Basis: Hourly |

| | Rate | Hours/Units | Current Period | Year To Date |
|---|---|---|---|---|
| **Earnings** | | | | |
| PTO Flagging | 30.00 | 8.00 | 240.00 | 480.00 |
| Prevail Wage 1 Reg-Temp Rte | 88.34 | 32.00 | 2826.88 | 5653.76 |
| Prevail Wage 2 OT-Temp Rate | 114.04 | 23.00 | 2622.92 | 4675.64 |
| Prevail Wage 3 DT-Temp Rate | 139.74 | 8.00 | 1117.92 | 2515.32 |
| **Gross Pay** | | **71.00** | **6807.72** | **13324.72** |
| **W/H Taxes** | | | | |
| Federal W/H(H) | | | 0.00 | 0.00 |
| Medicare | | | 98.31 | 192.39 |
| Social Security | | | 420.32 | 822.61 |
| Georgia State W/H(S/0) | | | 0.00 | 0.00 |
| Illinois State W/H(C/0) | | | 0.00 | 0.00 |
| **Deductions** | | | | |
| 401K % | | | 340.39 | 666.24 |
| Accident Plan | | | 1.87 | 3.74 |
| Dental | | | 2.00 | 4.00 |
| Hospital Indemnity | | | 2.25 | 4.50 |
| Medical CDHP | | | 26.39 | 52.78 |
| Reimburse Mileage Direct | | | -273.00 | -546.00 |
| Reimburse Travel Direct | | | -930.00 | -1860.00 |
| Reimburse Travel Indirect | | | -150.00 | -300.00 |
| Voluntary Life Employee | | | 10.75 | 21.50 |
| **Net Pay** | | | **7258.44** | **14262.96** |

Voucher No. 727776434DD

38. In 2026, as shown in the preceding example, Plaintiff Evans was paid for hours 0-40 for prevailing wage-paid hours worked at a rate of $88.34, but was paid overtime hours ("OT") at a rate of $114.04, which overtime rate is less than time-and-a-half of $88.34.

39. As another example, for the payroll period of 5/10/2026 – 5/16/2026, Defendant submitted its certified payroll transcript to the State of California as required by California prevailing wage laws, which included reporting the following payroll payment:

DIR State of California Department of Industrial Relations EST. 1927

**Public Works Electronic Payroll Reporting Form**

| | | | | |
|---|---|---|---|---|
| **PWCR#** | 1000058094 | **DIR Project ID** | 20250609982 | ☐ Statement of Non-Performance |
| **CSLB #** | | **Awarding Body** | Orange County Sanitation District | |
| **System Payroll #** | PRRUN5591550 | | | ☐ Final Payroll |
| **eCPR Sequence #** | 5 | **Project Name** | Santa Ana Trunk Sewer Rehabilitation | |
| **Payroll Period** | 05/10/2026 - 05/16/2026 | **Project Address** | ,,, | |
| **Contractor** | RAILPROS FIELD SERVICES | | | |
| **Contract With** | STEVE P. RADOS, INC. | **Project County** | | |

**Employee: x-redacted-x**
**Address** x-redacted-x **SSN** ***-**-**** **Check #** 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

**Hours Worked**
Craft/Classification/Level Laborer and Related Classifications-Group 1

| Type | Sun 05/10 | Mon 05/11 | Tue 05/12 | Wed 05/13 | Thu 05/14 | Fri 05/15 | Sat 05/16 | Total Hours | Base Hourly | Total Hourly Rate |
|---|---|---|---|---|---|---|---|---|---|---|
| S | 0 | 8 | 8 | 8 | 8 | 8 | 0 | 40 | 75.09 | 75.09 |
| O | 0 | 1.5 | 2 | 1 | 1 | 0 | 0 | 5.5 | 98.33 | 98.33 |

**Contributions**

| Vac/Holi | H&W | Pension | Other | Training | Total Hourly Fringe |
|---|---|---|---|---|---|
| 0 | 0 | 0 | 0 | 0 | 0 |

**Deductions** (lump sum/non hourly rates)

| Fed Tax | FICA (Soc Sec) | State Tax | SDI | Fund/ Admin | Savings | Dues | Other | Total Deductions |
|---|---|---|---|---|---|---|---|---|
| 372.44 | 285.91 | 219.17 | 48.59 | 0.00 | 0.00 | 0.00 | 0.00 | 1700.72 |

**Payments**

| Travel & subsistence |
|---|
| 252.65 |

**Wages Summary**

| Gross Wages for all projects | Gross Wages for this project | Net Wages Paid |
|---|---|---|
| 3744.42 | 3544.42 | 2296.35 |

**Employee Notes**
401K %: $748.88, Dental: $7.00, Voluntary Life Employee: $16.29, Voluntary Life Spouse: $2.44,

**Employee: x-redacted-x**
**Address** x-redacted-x **SSN** ***-**-**** **Check #** 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

**Hours Worked**
Craft/Classification/Level Laborer and Related Classifications-Group 1

| Type | Sun 05/10 | Mon 05/11 | Tue 05/12 | Wed 05/13 | Thu 05/14 | Fri 05/15 | Sat 05/16 | Total Hours | Base Hourly | Total Hourly Rate |
|---|---|---|---|---|---|---|---|---|---|---|
| S | 0 | 8 | 8 | 8 | 8 | 8 | 0 | 40 | 75.09 | 75.09 |
| O | 0 | 1.5 | 2 | 1 | 1 | 0 | 0 | 5.5 | 98.33 | 98.33 |

**Contributions**

| Vac/Holi | H&W | Pension | Other | Training | Total Hourly Fringe |
|---|---|---|---|---|---|
| 0 | 0 | 0 | 0 | 0 | 0 |

**Deductions** (lump sum/non hourly rates)

| Fed Tax | FICA (Soc Sec) | State Tax | SDI | Fund/ Admin | Savings | Dues | Other | Total Deductions |
|---|---|---|---|---|---|---|---|---|
| 531.46 | 278.92 | 288.35 | 47.64 | 0.00 | 0.00 | 0.00 | 0.00 | 1421.36 |

**Payments**

| Travel & subsistence |
|---|
| 756.39 |

**Wages Summary**

| Gross Wages for all projects | Gross Wages for this project | Net Wages Paid |
|---|---|---|
| 3911.80 | 3544.42 | 3246.83 |

**Employee Notes**
Accident Plan: $9.16, Medical CDHP: $230.96, Dental: $16.00, HSA EE Contribution: $18.87,

*Certification under penalty of perjury:*

"I, Samantha Ertter, the undersigned, certify on 05/26/2026, that I have the authority to act for and on behalf of RAILPROS FIELD SERVICES , certify under penalty of perjury that the records or copies thereof submitted and consisting of certified payroll records for the dates 05/10/2026 to 05/16/2026 are the originals or true, full, and correct copies of the originals which depict the payroll record(s) of the actual disbursements by way of cash, check, or whatever form to the individual or individuals named."

40. As shown in example in the preceding paragraph, Defendant paid a base hourly rate of $75.09, but paid 5.5 hours of overtime at an overtime rate of $98.33 which is less than time-and-a-half the $75.09 rate.

41. As another example, for the June 12, 2026 pay date for work performed on a prevailing wage-paid job in California (City of Redding, Olney Creek bridge work project) between June 1-June 5, 2026, Plaintiff Banks was paid a base hourly rate of $69.06, but paid 20 hours of overtime at an overtime rate of $88.01 which is less than time-and-a-half the $69.06 rate, and a double-time ("DT") rate of $106.96 which is less than twice the $69.06 rate:

06/12/2026 (#771740662)

Earnings

| Description | Rates | Hours/Units | Days | Amount |
|---|---|---|---|---|
| Regular Indirect | 36.00 | 0.00 | | $0.00 |
| Overtime Direct | 54.00 | 0.00 | | $0.00 |
| Overtime Indirect | 54.00 | 0.00 | | $0.00 |
| PTO Flagging | 36.00 | 0.00 | | $0.00 |
| Prevail Wage 1 Reg-Temp Rte | 69.06 | 38.50 | | $2,658.81 |
| Prevail Wage 2 OT-Temp Rate | 88.01 | 20.00 | | $1,760.20 |
| Prevail Wage 3 DT-Temp Rate | 106.96 | 2.00 | | $213.92 |
| Prevented Meal/Break | 36.00 | 10.00 | | $360.00 |
| Regular Direct | 36.00 | 1.50 | | $54.00 |
| Travel Time Direct-Temp Rate | 20.25 | 0.00 | | $0.00 |
| Travel Time Indirect-Temp Rate | 16.00 | 0.00 | | $0.00 |
| **Gross:** | | **72.00** | | **$5,046.93** |

42. As another example, Plaintiff Banks was similarly paid less than time-and-a-half the prevailing wage base rate for work on prevailing wage-paid jobs in Oregon from approximately December 18-22, 2023:

| Description | Rates | Hours/Units | Days | Amount |
|---|---|---|---|---|
| Regular Indirect | 35.00 | 0.00 | | $0.00 |
| Double Time Direct | 70.00 | 0.00 | | $0.00 |
| Overtime Direct | 52.50 | 0.00 | | $0.00 |
| Overtime Indirect | 52.50 | 0.00 | | $0.00 |
| Rules Class OT | 52.50 | 0.00 | | $0.00 |
| PTO Flagging | 35.00 | 0.00 | | $0.00 |
| Prevail Wage 1 Reg-Temp Rte | 46.93 | 38.00 | | $1,783.34 |
| Prevail Wage 2 OT-Temp Rate | 62.12 | 21.00 | | $1,304.52 |
| Prevail Wage 3 DT-Temp Rate | 0.00 | 0.00 | | $0.00 |
| Regular Direct | 35.00 | 2.00 | | $70.00 |
| Rules Class Reg | 35.00 | 0.00 | | $0.00 |
| Trainer Pay DT - Temp Rate | 0.00 | 0.00 | | $0.00 |
| Trainer Pay OT - Temp Rate | 0.00 | 0.00 | | $0.00 |
| Trainer Pay Reg - Temp Rate | 0.00 | 0.00 | | $0.00 |
| Training DT - Temp Rate | 40.00 | 0.00 | | $0.00 |
| Training OT - Temp Rate | 30.00 | 0.00 | | $0.00 |
| Training Reg - Temp Rate | 20.00 | 0.00 | | $0.00 |

43. As another example, Plaintiff Banks was similarly paid less than time-and-a-half the prevailing wage base rate for work on prevailing wage-paid jobs in Washington from approximately September 2-5, 2025 paid on or about September 12, 2025:

09/12/2025 (#693398586)

**Earnings**

| Description | Rates | Hours/Units | Days | Amount |
|---|---|---|---|---|
| Regular Indirect | 35.00 | 0.00 | | $0.00 |
| Double Time Direct | 70.00 | 0.00 | | $0.00 |
| Overtime Direct | 52.50 | 0.00 | | $0.00 |
| Overtime Indirect | 52.50 | 0.00 | | $0.00 |
| Rules Class OT | 52.50 | 0.00 | | $0.00 |
| PTO Flagging | 35.00 | 0.00 | | $0.00 |
| Prevail Wage 1 Reg-Temp Rte | 51.32 | 32.00 | | $1,642.24 |
| Prevail Wage 2 OT-Temp Rate | 69.18 | 16.00 | | $1,106.88 |
| Prevail Wage 3 DT-Temp Rate | 87.04 | 2.00 | | $174.08 |
| Prevented Meal/Break | 35.00 | 0.00 | | $0.00 |
| Regular Direct | 35.00 | 1.00 | | $35.00 |
| Regular Direct Flat | | | | $0.00 |
| Rules Class Reg | 35.00 | 0.00 | | $0.00 |
| Travel Time Direct-Temp Rate | 21.10 | 4.00 | | $84.40 |

44. As evidenced by these examples, throughout the Relevant Time Period, Plaintiffs and the Workers (including but not limited to the Opt-In Plaintiffs whose Consents have been filed with the Court) and State Law Workers performed work on public works projects paid by prevailing wages that were paid the same way resulting in the same underpayment of overtime premiums in the same way: by paying cash-in-lieu fringe benefits directly to Plaintiffs and the Workers, not to a third party or trustee, but paying those amounts only at straight time for all hours over 40 in a workweek rather than at time-and-a-half for all hours over 40 in a workweek.

45. Pursuant to a centralized, company-wide policy, pattern and/or practice, Defendant paid Plaintiffs, Workers, and State Law Workers in the manner described in the

examples displayed in the preceding paragraphs for all prevailing wage-paid work in Illinois, California, and upon information and belief, other states as well.

46. Defendant knew, by virtue of the fact that their contracts require payment of wages in compliance with the law, of their obligations under the FLSA, the IMWL, the California Labor Code and applicable IWC Wage Orders (and wage laws of other states in which Defendant employed prevailing wage-paid Workers), and acted willfully and/or recklessly under the FLSA and such state laws in failing to include fringe benefit amounts paid directly to Workers in the calculation of the regular rate for overtime and double time payments required by law.

47. Defendant's unlawful conduct, as described above, was willful and/or in reckless disregard of the FLSA and state laws, and accomplished through Defendant's centralized, company-wide policy, pattern, and practice of minimizing labor costs by violating the FLSA, the IMWL, the California Labor Code and applicable IWC Wage Orders, and other state laws.

48. As part of their regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a policy, pattern, and practice of violating the FLSA, the IMWL, the California Labor Code and applicable IWC Wage Orders (including Wage Order 16 governing on-site construction work), and other state laws with respect to payment of Plaintiffs and the putative Collective and State Law Class Members. This policy, pattern, and practice includes, but it is not limited to, Defendant's knowledge of their obligations and the work covered by prevailing wage laws that Plaintiffs and the putative Collective and State Law Class Members were, and have been, performing. As a result, Defendant has willfully failed to pay overtime premiums for overtime hours worked at the correct rate required by the FLSA and state laws to Plaintiffs and members of the putative Collective and State Law Classes.

49. Defendant's willful violations of the FLSA, IMWL, California Labor Code and applicable IWC Wage Orders, and State Laws is further demonstrated by the fact that during the course of the putative Collective and Class Action Periods and continuing to the present, Defendant filed certified payroll transcripts with Illinois and California that reveal the overtime premium underpayment on the face of the documents so certified and submitted, as demonstrated above.

50. Defendant's willful violations of the FLSA, IMWL, California Labor Code and applicable IWC Wage Orders, and other State Laws is also demonstrated by the fact that the Department of Labor announced in issuing its 2019 Final Rule regarding the FLSA's "regular rate" that cash payments paid directly to employees in-lieu of plan participation may not be excluded from the regular rate (84 FR 68736, 68761), citing and following *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016); and is further demonstrated by decades of district court opinions holding that such fringe benefit amounts paid directly to workers must be included in the regular rate for calculation of overtime premiums required by the FLSA and state law put Defendant on actual notice, or if not actual, then at least inquiry notice, that its payment policy was illegal, including but not limited to; *Rivas v. United Am. Sec., LLC*, 2026 U.S. Dist. LEXIS 35584 (D.D.C. Feb. 20, 2026); *Miranda v. Centerra Servs. Int'l, Inc.*, No. 24-cv-02340-BAS-MMP, 2025 U.S. Dist. LEXIS 267673 (S.D. Cal. Dec. 29, 2025); *Oliverio-Still v. AVMAC LLC*, No. 24-cv-0870-L-DEB, 2025 U.S. Dist. LEXIS 37731 (S.D. Cal. Mar. 3, 2025); *Williams v. Enter. Res. Planning Int'l, LLC*, No. 25-cv-234-BTM-AHG, 2025 U.S. Dist. LEXIS 122858 (S.D. Cal. June 26, 2025); *Badger v. City of Cortland*, No. 5:23-CV-0844 (GTS/MJK), 2024 U.S. Dist. LEXIS 96624, at *32 (N.D.N.Y. May 31, 2024); *Rattler-Bryceland v. Boutchantharaj Corp.*, 2023 U.S. Dist. LEXIS 253189 at *9 (W.D. Ok. 2023); *Bonner v. Metro. Sec. Servs.*,

2011 U.S. Dist. LEXIS 26251 (W.D. Tx. 2011); *Garcia v. R.J.B. Props., Inc.*, No. 06 C 4994, 2008 U.S. Dist. LEXIS 146966 (N.D. Ill. Apr. 15, 2008); *Barnes v. Akal Sec., Inc.*, 2005 U.S. Dist. LEXIS 12268 (D. Kan. 2005). Upon information and belief Defendant, however, failed to investigate whether its exclusion of fringe benefit amounts paid directly to Workers on prevailing wage-paid projects from the regular rate of pay for time-and-a-half overtime premiums (and, as applicable under state law, double time premiums) complied with the FLSA and the applicable state overtime wage laws.

51. In addition, Defendant paid travel time but failed to include travel time payments in the regular rate upon which overtime premiums were calculated and paid.

52. Due to the foregoing, Defendant's failure to pay overtime premiums in the amounts required by law for work performed by the putative Collective and State Law Class Members in excess of 40 hours per workweek was willful and/or reckless, and has been widespread, repeated and consistent.

**FLSA and Illinois Law Factual Allegations: Kick-back Violations**

53. Defendant was a contractor or sub-contractor on certain public works contracts with the Illinois government, including but not limited to as sub-contractor of Walsh Construction Company II, LLC, the awarded prime contractor by the Illinois State Toll Highway Authority, for (and governed by) contracts including but not limited to No. I-21-4732 related to the I-490 construction and the Bensenville and York Road yard locations ("Walsh Construction projects").

54. Plaintiffs Evans and Harris and the putative Collective and Class Members and Sub-Collective Members worked as, and were classified and paid by Defendant as prevailing wage-owed positions, including but not necessarily limited to positions classified by prevailing

wage rulings as "Laborers," including on the Walsh Construction projects, as evidenced by, *inter alia*, its certified payroll reports submitted to the State of Illinois.

55. Plaintiffs' and the putative Collective and Class Members' and Sub-Collective Members' work as Laborers facilitated actual construction.

56. Plaintiffs and the putative Collective and Class Members and Sub-Collective Members, in their work as Laborers, were engaged in the transportation of materials and equipment to or from the work site.

57. Plaintiffs Evans and Harris who worked in Illinois on prevailing wage-paid projects, and the putative Collective and Class Members and Sub-Collective Members who did so as well, were told before commencing the work at issue that they would be paid prevailing wages for work on the Illinois public works projects.

58. Plaintiff Evans, for example, was told by Defendant's Manager, Zach Green, while he was working in New York, that he wanted Plaintiff Evans to relocate to Chicago to work on a project for which he would be paid prevailing wages.

59. Plaintiff Evans, in reliance on that employment agreement, relocated to Chicago, committed to a lease, and began working on the Illinois Tollway project at the Bensenville job site.

60. Only after Plaintiff Evans received his first paycheck for work on the Bensenville project did Zach Green then tell Plaintiff Evans that he would have to pay "kick-back" payments to Zach Green to keep his position on the project secure and to continue receiving prevailing wage-paid job assignments—*i.e.,* if Plaintiff Evans paid the kick-backs, Zach Green could ensure that Plaintiff Evans would continue working and remain assigned to the Bensenville

project for as long as he wanted, but if he did not make the "kick-back" payments, his ability to retain the job assignment was in jeopardy.

61. The FLSA and applicable state overtime laws require that employers pay legally required overtime premiums and prevailing wages free and clear, without Workers having to "kick-back" any amount of such payments to management.

62. Prevailing wage-paid Workers employed by Defendant to work on public works projects in Illinois, including but not limited to the Illinois Tollway Authority projects for which Walsh Construction was prime contractor and Defendant was a contractor (the "Sub-Collective Members"), reported to and were managed by Defendant's managers above Plaintiffs' and Worker's reporting level, specifically Zachary W. Green (however titled, as Manager of Operations, or Manager of RWIC Operations, or Manager of CPCK North) and Brandon Sneed (however titled, as Supervisor of Operations, Supervisor of RWIC Operations, or Supervisor of CPKC North) (each a "Manager" and collectively the "Managers").

63. The Sub-Collective Members who were required to pay such kick-back payments to Managers include but are not limited to Plaintiffs, and Opt-in Plaintiffs to the Sub-Collective Seth Stewart, Andrew Smith, Jonathan Robbins, and Chris Haynes whose Consent forms were filed with the Complaint.

64. Defendant employed Zach Green as a managing agent during the Relevant Time Period until his separation from employment on or about February 27, 2026.

65. During that time, Defendant employed Zach Green as Manager of RWIC operations for its work on the Illinois Tollway Authority project for which Walsh Construction was the prime contractor, including the project in and around the Bensenville Yard.

66. During that time, Defendant conferred upon Zach Green authority to hire, fire, and decide job assignments, including authority to decide which (and whether) employees would receive the opportunity to work on prevailing wage-paid jobs.

67. During that time, Defendant conferred upon Zach Green authority to manage Defendant's employees working on the Illinois prevailing wage-paid jobsite.

68. During that time, Defendant conferred upon Zach Green authority to supervise Defendant's employees working on the Illinois prevailing wage-paid jobsite.

69. During that time, Defendant conferred upon Zach Green authority to make determinations regarding Defendant's employees' hours, pay, and job assignments to work, regarding the Illinois prevailing wage-paid jobsite.

70. In or about August-October 2025, two RWICs who worked on the Illinois prevailing wage-paid job (the Bledsoes) notified Defendant of their complaint that they were required to pay kick-backs to Defendant's then-Manager of RWIC Operations, Zach Green.

71. Defendant continued to employ Zach Green after the date of such notification, through a date on or about February 27, 2026 when Zach Green's employment with Defendant ended.

72. Defendant did not stop Zach Green's continued demands for and receipt of kick-back payments from the date of such notification through the date of Zach Green's separation from employment.

73. Defendant did not repay Zach Green's received kick-back payments to the Workers.

74. Defendant employed Brandon Sneed as a managing agent during the Relevant Time Period.

75. During that time, Defendant employed Brandon Sneed as Supervisor or other manager-titled position for RWIC operations for its work on the Illinois Tollway Authority project for which Walsh Construction was the prime contractor, including the project in and around the Bensenville Yard.

76. During that time, Defendant conferred upon Brandon Sneed authority to hire, fire, and decide job assignments, including authority to decide which (and whether) employees would receive the opportunity to work on prevailing wage-paid jobs.

77. During that time, Defendant conferred upon Brandon Sneed authority to manage Defendant's employees working on the Illinois prevailing wage-paid jobsite.

78. During that time, Defendant conferred upon Brandon Sneed authority to supervise Defendant's employees working on the Illinois prevailing wage-paid jobsite.

79. During that time, Defendant conferred upon Brandon Sneed authority to make determinations regarding Defendant's employees' hours, pay, and/or job assignment to work, regarding the Illinois prevailing wage-paid jobsite.

80. Defendant continued to employ Brandon Sneed after the date of such notification.

81. Defendant did not stop Brandon Sneed's continued demands for and receipt of kick-back payments from the date of such notification through the date of Zach Green's separation from employment.

82. Defendant did not repay Brandon Sneed's received kick-back payments to the Workers.

83. Throughout the relevant period, Manager Green, and eventually joined by Manager Sneed, notified Plaintiffs Evans and Harris and the Sub-Collective Members working on the Walsh Construction projects at issue that they were required to pay money directly to

Managers, and/or directly to Managers' agents for receiving payments as directed by Managers (Manager Green's designated agents for receiving Manager Green's payments were Katie Stiebel ("$KatieStiebel7" or "KatieStiebel7$" in CashApp) and Misty Green), as a "pay to stay" obligation in order to continue receiving and maintaining job assignments to work on prevailing wage-paid projects for Defendant, and if such payments as demanded were not paid, Manager Green would send them home, would not have a job assignment to send them to, and would not assign them the prevailing wage-paid job to which he had assigned them.

84. As but one example, Manager Green provided the CashApp account information for Katie Stiebel in requiring Plaintiff Evans to send payments directly to Katie Stiebel as his agent:


9:02
9
Railpro Sup Zach Green Personal
Wed, Oct 15 at 5:15 PM
Call me when you get off
Thu, Oct 16 at 3:55 PM
KatieStiebel7$
iMessage

85. Throughout the relevant period, Manager Green, and eventually joined by Manager Sneed, required payments from and did in fact receive payments from Plaintiffs Evans and Harris and the Sub-Collective Members working on those Walsh Construction projects directly to paid to Managers, and/or directly to their agents for receiving payments as directed by Managers, as a "pay to stay" obligation in order to continue receiving and maintaining job assignments to work on prevailing wage-paid projects for Defendant under threat of being sent home and losing work assignment(s).

86. The "kick-back" payments Defendant's Managers required under this "pay to stay" obligation were paid by cash, or Venmo, or CashApp, or cryptocurrency deposits via Robinhood, to Managers, including but not limited to the following examples:


9:56
Your history
June 2025
May 2025
Zachary Green $400
loan
May 30
Zachary Green $415
puppy 8 FINAL PAYMENT
May 23
Zachary Green $400
loan
May 23
Zachary Green $405
puppy 7
May 16
Zachary Green $400
loan
May 16
Zachary Green $400
loan
May 9
Zachary Green $405
puppy 6
May 9


5:15
K
Katie Stiebel
$KatieStiebel7
Joined Aug 2025
Not paid by people you know
Not in your synced contacts
Your history
Show more
28
Total transactions
$0.00
$16,100.00
Total received
Total sent
Katie Stiebel
$1,300
Request
Pay


K
Katie Stiebel
$KatieStiebel7
Joined Aug 2025
Not paid by people you know
Not in your synced contacts
Your history
Show more
27
Total transactions
$0.00
$15,892.00
Total received
Total sent

11:56 5G+ 74

Your history

## January 2026

## December 2025

| | | |
|---|---|---|
| K | Katie Stiebel<br>SS<br>Dec 29, 2025 | $1,300 |
| K | Katie Stiebel<br>G/CJ<br>Dec 26, 2025 | $900 |
| K | Katie Stiebel<br>G<br>Dec 19, 2025 | $500 |
| K | Katie Stiebel<br>SS<br>Dec 17, 2025 | $500 |
| K | Katie Stiebel<br>G<br>Dec 12, 2025 | $500 |
| K | Katie Stiebel<br>G<br>Dec 5, 2025 | $500 |
| K | Katie Stiebel<br>SW<br>Dec 5, 2025 | $300 |
| K | Katie Stiebel<br>G<br>Dec 2, 2025 | $500 |


6:25
Back
Transaction Details
Person-to-Person Transfer
CASH APP*ZACHARY GREEN
Oakland CA ad983a51
*****8417 09/26 23:34
09/29/2025
-$500.00
$8,723.19
Account Name
chris
Status
Posted
Transaction Type
Debit

6:23

Back **Transaction Details**

**WTHDRL CHK 8417 09/05 05:25 PNC BANK P** -$403.75
09/05/2025 $8,621.28

| | |
|---|---|
| Account Name | **chris** |
| Status | **Posted** |
| Transaction Type | **Debit** |

6:27

Back **Transaction Details**

**VENMO/PAYMENT 1044940709397 CHRIS EVANS** -$500.00

09/19/2025 $10,352.47

| | |
|---|---|
| Account Name | **chris** |
| Status | **Posted** |
| Transaction Type | **Debit** |

7:13

View XRP

-178.000015 XRP

XRP

Status

Complete

You sent $502.27 of XRP with a $0.00004233 network fee based on a market rate of $2.82.

Sent to

rf82s1CDagppvM6ATqc1nSrL6GackzHJrm

Memo

3872831200

Network fee

0.000015 XRP

Submission

Oct 10, 2025 · 7:01 am

Processing

Oct 10, 2025 · 7:02 am

Transaction ID

Oct 10, 2025 · 7:02 am

7:13

View XRP

-155.000015 XRP

XRP

Status

Complete

You sent $472.43 of XRP with a $0.00004572 network fee based on a market rate of $3.05.

Sent to

rf82s1CDagppvM6ATqc1nSrL6GackzHJrm

Memo

3872831200

Network fee

0.000015 XRP

Submission

Oct 3, 2025 · 2:49 pm

Processing

Oct 3, 2025 · 2:49 pm

Transaction ID


2:34
56
Z
Zachary Green
Jul 27, 2025 at 2:35 PM
For supplies
$600.00
Transaction details
Complete
Payment sent successfully
Payment between
To: Zachary Green
From: Andrew Smith
Payment source
REGIONS BANK
Fees
None applied
Transaction number
#D-375JRR82


I will be. I appreciate you reaching out
2:37
56
work tomorr
15
Zach
in this afternoon to
Ok gotcha
Fri, Jul 25 at 9:51 AM
You be back Sunday?
I can get up with you whenever you do unless you left it with Jonathan
I'll get with you Monday if you don't mind. I was going to go the bank when I got off yesterday but I got on the phone with one of my older sister's yesterday and it really fucked me up
He's man all good ain't no worries
But I'll have 600 ready for you when I get back
Bro your good man go handle your business I know you got a lot of shit going on if you need something let me know man
You use chase I have Zelle through them too.
What about cashapp?
I got that too
iMessage
$greenz03


2:48
54
15
Zach
11. These checks are going to be better!!
Oh bet. Hell yea
Tue, May 13 at 8:06 PM
You pulling up on me tomorrow? I'll have it ready if so
Yea I'll be there
Bet I'll be ready for you
Bet
Wed, May 14 at 10:05 AM
I'm on the way to you
I'm ready for ya
Fri, May 16 at 10:26 AM
What's your total? Just curious
3803.03
And last week's PW was 2942.72 before taxes. My taxes came out to about 26% last week
I got you. Ain't no worries appreciate you
Earnings
Description Rates Hours/Units Amount
Rules Class OT $45.00 1.00 $45.00
Prevail Wage 1 Reg-Temp Rte $85.69 24.00 $2,056.56
Prevail Wage 2 OT-Temp Rate $110.77 8.00 $886.16
iMessage

87. The required "kick-back" payments necessarily resulted in Plaintiffs Evans and Harris, and the Sub-Collective Members on the Illinois prevailing wage-paid projects for which kick-back payments were required, not receiving prevailing wages, and not receiving wages and overtime premiums, free and clear.

88. The required "kick-back" payments necessarily resulted in Plaintiffs Evans and Harris and the Sub-Collective Members on the Illinois Walsh Construction prevailing wage-paid projects paying employee-side payroll taxes on the total amount of prevailing wages, wages and overtime premiums, paid, without retaining the wages upon which such taxes were paid by Plaintiffs Evans and Harris and the Sub-Collective Members.

89. Defendant was aware that the Managers were requiring these "kick-back" payments because Reshon Bledsoe and Keyshawn Bledsoe complained to Defendant about them in approximately August/September of 2025, but Defendant did nothing to remedy the illegal scheme or return "kick-back" monies paid to Plaintiffs Evans and Harris and the Sub-Collective Members.

90. Despite Defendant receiving the Bledsoes' complaint in approximately August/September of 2025, Defendant continued to employ the Managers, and the Managers continued to require and receive the "kick-back" payments from Plaintiffs and the Sub-Collective Members, until Manager Green separated from employment February 27, 2026.

91. Defendant is liable for the acts of its Managers.

92. Defendant is further liable because it ratified its Managers' retention of the "kick-back" payments after RailPros was notified of such payments in or about August/September 2025 without returning the funds and without ceasing the kick-back payment scheme.

93. Due to the foregoing, Defendant's failure to pay prevailing wages, wages, and overtime premiums free and clear, and Defendant's failure to return monies paid as "kick-back" payments to Plaintiffs Evans and Harris and the Sub-Collective Members, was willful and/or reckless, widespread throughout its Illinois prevailing wage-paid operations for the Walsh Construction project, repeated, and consistent.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

94. Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiffs seek to prosecute their FLSA claims as a Collective Action on behalf of all putative Collective members (and, for Plaintiffs Evans and Harris, all Sub-Collective Members) at any time during the FLSA relevant period.

95. Defendant is liable under the FLSA for, *inter alia*, failing to pay the full amount of required premium overtime wages to Plaintiffs and the putative Collective during the FLSA relevant period for all hours worked over 40 in any given prevailing wage-paid workweek, and failing to pay FLSA wages and overtime premiums free and clear to Plaintiffs Evans and Harris and the Sub-Collective Members.

96. Consistent with Defendant's policy, pattern and/or practice, Plaintiffs and the putative Collective Members as Workers regularly performed prevailing wage-paid work in excess of 40 hours per workweek, for their employer's benefit without being paid all required overtime premium wages, and for Plaintiffs Evans and Harris and the Sub-Collective Members without being paid all required wages and overtime premiums free and clear for such weeks, in violation of the FLSA.

97. During his time as a Worker and Sub-Collective Member, Plaintiff Evans routinely worked more than 40 prevailing wage-paid hours a week but was not paid all required overtime compensation for the overtime hours he worked, and in addition Plaintiff Evans was

required to kick-back wages paid to his Manager of RWIC resulting in the wages and overtime premiums paid not being received free and clear for such weeks.

98. During his time as a Worker and Sub-Collective Member, Plaintiff Harris routinely worked more than 40 prevailing wage-paid hours a week but was not paid all required overtime compensation for the overtime hours he worked, and in addition Plaintiff Harris was required to kick-back overtime wages paid to his Manager of RWIC resulting in the wages and overtime premiums paid not being received free and clear for such weeks.

99. During his time as a Worker, Plaintiff Banks routinely worked more than 40 prevailing wage-paid hours a week but was not paid all required overtime compensation for the overtime hours he worked.

100. Based on certified payroll transcripts filed with the States of California and Illinois alone, there are likely hundreds of current and former Workers who have not been paid the full amount of premium overtime wages required under the FLSA, and based on payroll transcripts filed with the State of Illinois numerous Sub-Collective Members who worked over 40 hours on prevailing wage-paid jobs but were not paid wages and overtime premiums free and clear as required under the FLSA for such weeks, and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join. Thus, notice should be sent to the putative Collective Action Members pursuant to 29 U.S.C. § 216(b).

101. The putative Collective Action Members are known to Defendant, are readily identifiable, and can be located through Defendant's records.

**ILLINOIS SUPPLEMENTAL STATE LAW AND CLASS ALLEGATIONS**

102. Pursuant to this Court's exercise of supplemental jurisdiction over the state law claims pled that Plaintiffs Evans and Harris and the putative Collective Action Members and

Sub-Collective Members individually assert by joining the action, and pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), Plaintiffs seek to prosecute their IMWL claims (and as to Sub-Collective Members, in addition to IMWL claims, their Illinois Wage Payment Collection Act ("IWPCA"), IPWA, and Illinois conversion and unjust enrichment claims) individually; on behalf of all Collective and Sub-Collective Members who worked in Illinois who join the action and thus its supplemental IMWL and (in addition to IMWL for Sub-Collective Members, IWPCA, IPWA, and Illinois conversion and unjust enrichment claims); and, as a class action on behalf of all persons who are or were formerly employed by Defendant as Workers in Illinois, at any time during the Relevant Time Period (the "Illinois Class").

103. The persons in the Illinois Class are so numerous that their joinder is impracticable.

104. There are questions of law and fact common to the Illinois Class and such questions predominate over questions solely affecting individual members of the Class (for example, whether Defendant paid Illinois Workers the full amount of required overtime premiums under the IMWL and/or, for the Sub-Collective Members, failed to pay wages and overtime premiums free and clear under the IMWL or illegally deducted from wages by "kick-back" payments under the IWPCA, or converted wages or was unjustly enriched by the retention of "kick-back" payments, or whether Defendant paid the Sub-Collective Members the required prevailing hourly rates of wages for all hours and overtime hours worked under the IPWA due to return of such wages by "kick-back" payments).

105. These claims asserted by Plaintiffs Evans and Harris are typical of the claims of the Illinois Class, Plaintiffs Evans and Harris are adequate representatives to fairly prosecute the

interests of the Class, and Plaintiffs Evans and Harris have retained competent counsel to advance the interests of the Class.

106. A class action is superior to other methods of adjudicating the IMWL claims arising out of unpaid overtime premiums or, for the "kick-back" violations alleged in this case, the IMWL, IWPCA, conversion, unjust enrichment, and IPWA claims.

**CALIFORNIA SUPPLEMENTAL STATE LAW AND CLASS ALLEGATIONS**

107. Plaintiff Banks incorporates Paragraphs 3, 12, 14, 26-35, 39-41, and 44-52 herein.

108. Plaintiff Banks seeks to prosecute his California Labor Code and applicable IWC Wage Order claims individually, on behalf of all Collective Members who worked in California for which prevailing wages were required and/or paid who join the action and thus its supplemental California Labor Code and applicable IWC Wage Order claims, and as a class action on behalf of the California Class.

109. The persons in the California Class are so numerous that their joinder is impracticable.

110. There are questions of law and fact common to the California Class and such questions predominate over questions solely affecting individual members of the Class, including but not limited to:

a. Whether Defendant unlawfully failed to pay the California Class all overtime and double time compensation owed for California Work, in violation of the California Labor Code and the applicable Wage Order, Cal. Labor Code §§ 226, 510, 1174, 1174.5, and 1194; Cal. Wage Order No. 4-2001; and the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200 et seq.;

b. Whether Defendant unlawfully failed to provide the California Class accurate itemized wage statements listing the correct and legally required rates of pay for California Work, under Cal. Lab. Code § 226;

c. Whether Defendant unlawfully failed to pay the California Class all compensation owed and due to the California Class members for California Work upon separation of employment, in violation of California Labor Code §§ 201—203; and

d. the nature and extent of California Class members' injuries and the appropriate measure of damages for California Class members.

111. Plaintiff Banks' claims are typical of the claims of the California Class he seeks to represent. Plaintiff Banks and the California Class worked or work for Defendant on prevailing wage-paid projects in California and have been subjected to Defendant's policy and pattern or practice of failing to pay proper overtime wages for California work hours worked in excess of 40 hours per workweek and/or 8 hours per workday, and double time pay required by California law for hours worked over twelve hours in a day and/or a seventh consecutive day.

112. Plaintiff Banks is an adequate representative to fairly prosecute the interests of the California Class. Plaintiff Banks understands that, as a class representative, he assumes a fiduciary responsibility to the California Class members to represent their interests fairly and adequately. Plaintiff Banks recognizes that as the class representative, he must represent and consider the interests of the California Class just as he would represent and consider his own interests. Plaintiff Banks understands that in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the California Class. Plaintiff Banks recognizes that any resolution of a class action lawsuit, including any

settlement or dismissal thereof, must be in the best interests of the California Class. Plaintiff Banks understands that in order to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in his possession, and testify, if required, in a deposition and in trial.

113. Plaintiff Banks has retained competent counsel to advance the interests of the California Class.

114. A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual Worker may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The California Class members have been damaged and are entitled to recovery as a result of Defendant's common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the California Class are not de minimis, such damages are relatively small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

115. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

**FIRST CAUSE OF ACTION**
**(FLSA: UNPAID OVERTIME WAGES)**
**(Brought on Behalf of Plaintiffs and All Putative Collective Action Members)**

116. Plaintiffs, on behalf of themselves and all putative Collective Action Members, re-allege and incorporate by reference paragraphs 1 through 52 and 94-101 as if they were set forth again herein.

117. At all relevant times, Defendant has been, and continues to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

118. During or within the relevant period, Defendant employed Plaintiffs, and employed, or continue to employ, each of the putative Collective Members within the meaning of the FLSA.

119. Defendant has engaged in a widespread pattern and practice of violating the FLSA, as described in this FAC.

120. The overtime wage provisions set forth in 29 U.S.C. §§ 201, *et seq*., apply to Defendant.

121. At all relevant times and continuing to the present, Defendant has had a policy and practice of refusing to pay time-and-a-half overtime premiums on fringe benefits paid directly to prevailing wage-paid Workers for hours worked in excess of 40 hours in a workweek.

122. As a result of Defendant's willful failure to compensate Plaintiffs and the putative Collective Members as required by law, Defendant has violated, and as to the Collective Action Members paid by prevailing wages for which fringe benefits are not paid at time-and-a-half continues to violate, the FLSA, 29 U.S.C. §§ 201, *et seq*..

123. As a result of Defendant's willful "kick-back" practice or policy, Defendant failed to accurately preserve records with respect to each of its employees sufficient to determine the

wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

124. As a result of Defendant's FLSA violations, Plaintiffs, on behalf of themselves and the putative Collective Members (and for Plaintiffs Evans and Harris, on behalf of themselves and the Sub-Collective Members), are entitled to (a) recover from Defendants their unpaid wages for all of the hours worked by them over 40 in a workweek, as premium overtime compensation, and as to the Sub-Collective Members, all wages not paid free and clear; (b) recover an additional, equal amount as liquidated damages for Defendant's willful violations of the FLSA; and, (c) recover their unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

125. Defendant's violations of the FLSA have been willful, thus a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**SECOND CAUSE OF ACTION**
**(FLSA: UNPAID OVERTIME WAGES)**
**(Brought on Behalf of Plaintiffs Evans and Harris and all Sub-Collective Members who Join the Action)**

126. Plaintiffs Evans and Harris, on behalf of themselves and all Sub-Collective Members, re-allege and incorporate by reference paragraphs 1-30 and 53-93 as if they were set forth again herein.

127. At all relevant times and continuing to the present, Defendant had (and/or, ratified) a policy and practice through its Managers as managing agents of its Managers requiring Plaintiffs Evans and Harris and the Sub-Collective Members to pay "kick-back" payments to the Managers on the Illinois prevailing wage-paid projects resulting in failure to pay wages (and overtime premiums) free and clear.

128. As a result of Defendant's willful failure to compensate Plaintiffs Evans and Harris and the Sub-Collective Members as required by law, Defendant violated the FLSA, 29 U.S.C. §§ 201, *et seq.*

129. As a result of Defendant's willful "kick-back" practice or policy, Defendant failed to accurately preserve records with respect to each of its affected employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

130. As a result of Defendant's FLSA violations, Plaintiffs Evans and Harris, on behalf of themselves and the putative Sub-Collective Members, are entitled to (a) recover from Defendant their unpaid wages for all of the hours worked by them over 40 in a workweek, and all wages not paid free and clear; (b) recover an additional, equal amount as liquidated damages for Defendant's willful violations of the FLSA; and, (c) recover their unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

131. Defendant's violations of the FLSA have been willful, thus a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**THIRD CAUSE OF ACTION**
**(IMWL: UNPAID OVERTIME WAGES)**
**(Brought on Behalf of Plaintiffs Evans and Harris, all Illinois Workers Who Join or are Joined to the Action, and the Illinois Class Sub-Collective Members)**

132. Plaintiffs Evans and Harris, on behalf of themselves and all individuals who join or are joined to this action including by the filing of their Consent forms to join this case, and the Illinois Class, re-allege and incorporate by reference paragraphs 1–30 and 53-93.

133. Plaintiffs Evans and Harris, and all Illinois Workers who join or are joined to this action including by the filing of their Consent forms to join this case, also assert their individual

claims under the IMWL claims pled in this action.

134. During the Relevant Time Period, Plaintiffs Evans and Harris and the Illinois Class Members were employees of Defendant, and Defendant was their employer within the meaning of the IMWL, 820 ILCS 105/3(c).

135. Prior to and continuing throughout the present, Defendant failed to pay Plaintiffs Evans and Harris and Illinois Class Members overtime premiums at time-and-a-half a regular rate that included Defendant's fringe benefit amounts paid directly to such Plaintiffs and the Illinois Class Members for prevailing wage-paid work in Illinois as required under the IMWL.

136. Prior to and continuing throughout the Relevant Time Period until on or about the time of Manager Zach Green's separation from employment, Defendant also failed to pay Plaintiffs Evans and Harris and the Sub-Collective Members wages and overtime premiums free and clear as required under the IMWL due to "kick-back" payments.

137. During the Relevant Time Period, Plaintiffs Evans and Harris and Illinois Class Members consistently worked more than 40 hours in a workweek on a prevailing wage-paid job in Illinois without being paid the overtime compensation required by the IMWL.

138. Plaintiffs Evans and Harris and the Illinois Class Members are entitled to unpaid overtime under the IMWL as well as all other relief provided by law, including all penalties and interest applicable to the weeks worked, including but not limited to treble the amount of the unpaid overtime, damages in the amount of 5% of the amount of any such unpaid overtime for each month following the date of payment during which such overtime remains unpaid, prejudgment interest, and attorneys' fees and costs pursuant to §12(a) of the IMWL, 820 ILCS 105/12.

**FOURTH CAUSE OF ACTION**
**(Illinois Wage Payment and Collection Act)**

**(Brought on Behalf of Plaintiffs Evans and Harris, all Illinois Workers Who Join or are Joined to the Action, and the Illinois Class Sub-Collective Members)**

139. Plaintiffs Evans and Harris, on behalf of themselves and all individuals who join or are joined to this action including by the filing of their Consent forms to join this case, and the Illinois Class Sub-Collective Members, re-allege and incorporate by reference paragraphs 1–30, and 53-93.

140. Plaintiffs Evans and Harris and the Illinois Class were employed to work on prevailing wage-paid public works projects that contractually required RailPros, a party to the contracts awarded to RailPros as contractor, to pay specific prevailing wages for hours worked.

141. RailPros – by and through its Managers, and/or by ratifying the retention of their "kick-back" payments made after RailPros was notified of such payments in or about August/September 2025 without returning the funds and without ceasing the kick-back payment scheme – subjected Plaintiffs Evans and Harris and the Illinois Class Sub-Collective Members to illegal deductions from their contractually required wages and overtime premiums by "kick-back" payments to RailPros' Managers.

142. The required "kick-back" payments constitute an illegal deduction pay under the IWPCA, 820 ILCS 115/9.

143. The required "kick-back" payments also violate 56 Ill. Adm. Code 300.720, *et seq.*, because Plaintiffs Evans and Harris and the Illinois-Class Sub-Collective Members did not provide their written agreement permitting or authorizing those deductions from their wages freely at the time the deductions were made.

144. Any agreement, express or implied, requiring Plaintiffs Evans and Harris and the Illinois Class Sub-Collective Members to kick-back wages to Defendant's Managers is illegal and unenforceable because rights to wages owed cannot be waived by private agreement between

employee and employer. *See generally O'Brien v. Encotech Constr. Servs., Inc.*, 183 F. Supp. 2d 1047 (N.D. Ill. 2002) (releases under Wage Act are void as a matter of law); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2001 U.S. Dist. LEXIS 18370, 2001 WL 1403007 (N.D. Ill. Nov. 9, 2001).

145. The "kick-back" payments resulted in Defendant not paying Plaintiffs Evans and Harris and the Illinois Class Sub-Collective Members the applicable wages free and clear, which resulted in such Plaintiffs and the Illinois Class Sub-Collective Members receiving wages at less than those required by their agreement of employment.

146. Due to these illegal deductions from wages in violation of the IWPCA, Plaintiffs Evans and Harris and the Illinois Class Sub-Collective Members are entitled to the restitution of kick-back payments under the IWPCA, as well as all other relief provided by law, including all penalties and interest applicable to the weeks worked on prevailing wage-paid projects in Illinois, including but not limited to treble the amount of the deductions, damages in the amount of 5% of the amount of any such deductions for each month following the date of payment during which such deductions remain unpaid, prejudgment interest, and attorneys' fees and costs, and all other IWPCA remedies and damages allowed by law.

**FIFTH CAUSE OF ACTION**
**(Illinois Law: Conversion)**
**(Brought on Behalf of Plaintiffs Evans and Harris, all Illinois Workers Who Join or are Joined to the Action, and the Illinois Class Sub-Collective Members)**

147. Plaintiffs Evans and Harris, on behalf of themselves and all individuals who join or are joined to this action including by the filing of their Consent forms to join this case, and the Illinois Class Sub-Collective Members, re-allege and incorporate by reference paragraphs 1–30, and 53-93.

148. Plaintiffs Evans and Harris and the Illinois Class Sub-Collective Members had a personal right to the property at issue (their wages), had an absolute and unconditional right to immediate possession of their wages, demanded their wages by their agreement of employment and work performed in earning such wages, and RailPros – by and through its Managers, and/or by ratifying the retention of their "kick-back" payments made after RailPros was notified of such payments in or about August/September 2025 without returning the funds and without ceasing the kick-back payment scheme – wrongfully assumed control of the wages converted by "kick-back" payments to RailPros' Managers.

149. Due to this conversion, Plaintiffs Evans and Harris and the Illinois Class are entitled to the market value of the property (cryptocurrency funds, cash, and electronically transmitted funds) at the time and place of the conversion, plus legal interest in the amount provided by Illinois law, in addition to punitive damages for conversion.

**SIXTH CAUSE OF ACTION**
**(Illinois Law: Unjust Enrichment)**
**(Brought on Behalf of Plaintiffs Evans and Harris, all Illinois Workers Who Join or are Joined to the Action, and the Illinois Class Sub-Collective Members)**

150. Plaintiffs Evans and Harris, on behalf of themselves and all individuals who join or are joined to this action including by the filing of their Consent forms to join this case, and the Illinois Class Sub-Collective Members, re-allege and incorporate by reference paragraphs 1–30, and 53-93.

151. RailPros – by and through its Managers, and/or by ratifying the retention of their "kick-back" payments made after RailPros was notified of such payments in or about August/September 2025 without returning the funds and without ceasing the kick-back payment scheme – has unjustly retained a benefit (the wages lost by kick-back payments), and the

retention of those kick-back amounts violates the fundamental principles of justice, equity, and good conscience.

152. Due to this unjust enrichment, Plaintiffs Evans and Harris and the Illinois Class Sub-Collective Members are entitled to restitution of their property (cryptocurrency funds, cash, and electronically transmitted funds), and any applicable interest provided by law.

## SEVENTH CAUSE OF ACTION
## (Illinois Prevailing Wage Act)
## (Brought on Behalf of Plaintiffs Evans and Harris, all Illinois Workers Who Join or are Joined to the Action, and the Illinois Class Sub-Collective Members)

153. Plaintiffs Evans and Harris, on behalf of all individuals who join or are joined to this action including by the filing of their Consent forms to join this case, and the Illinois Class Sub-Collective Members, re-allege and incorporate by reference paragraphs 1–30, and 53-93.

154. Plaintiffs Evans and Harris and the Illinois Class Sub-Collective Members were workers employed to work under positions classified by Illinois rulings as prevailing wage-owed positions, including but not necessarily limited to as "Laborers," on an Illinois Tollway Authority public works contract in Illinois by Defendant, who was a sub-contractor under that contract, within the meaning of the IPWA, 820 ILCS 130/2.

155. Pursuant to the IPWA, 820 ILCS 130/3, Defendant is required to pay Plaintiffs Evans and Harris and the Illinois Class Sub-Collective Members a wage not less than the prevailing rate of hourly wages for work of a similar character on public works in which the work is performed, and not less than the general prevailing rate of hourly wages for legal holiday and overtime work, which specific rates are ascertained under the IPWA by the Illinois Department of Labor and published on its official website no later than July 15 of each year.

156. Defendant failed to pay Plaintiffs Evans and Harris and the Illinois Class Sub-Collective Members the prevailing wage rate as required under the IPWA due to the actions of

its Managers, and in addition its ratification of the retention of the "kick-back" payments after RailPros was notified of such payments in or about August/September 2025 without returning the funds and without ceasing the kick-back payment scheme. Those "kick-back" payments resulted in such Plaintiffs and the Illinois Class Sub-Collective being paid a wage less than the applicable prevailing rates for their hours worked.

157. The "kick-back" payments resulted in Defendant not paying Plaintiffs Evans and Harris and the Illinois Class Sub-Collective Members the applicable prevailing wage rates free and clear, which resulted in such Plaintiff and the Illinois Class Sub-Collective Members receiving wages at less than wages paid at the applicable prevailing wage rates.

158. Due to Defendant's failure to pay wages in accordance with the prevailing rates, Plaintiffs Evans and Harris and the Illinois Class Sub-Collective Members are entitled to the difference between the amount so paid and the prevailing wage rates provided by the contract, as well as all other relief provided by law, including, but not limited to, damages in the amount of 2% of the amount of any Department of Labor penalty owed (equal to 20% of the underpayments) for each month following the date of payment during which the underpayments remain unpaid, and attorneys' fees and costs, and all other IPWA remedies and damages allowed by law.

**EIGHTH CAUSE OF ACTION**
**(Failure to Pay Overtime Compensation Under California Law)**
**(Brought on Behalf of Plaintiff Banks and the California Class)**

159. Plaintiff Banks realleges and incorporates by reference paragraphs 1, 3, 12, 14, 18-24, 26-35, 39-41, 44-52, and 107-115, as though fully set forth herein.

160. Plaintiff Banks, and all California Workers who join or are joined to this action including by the filing of their Consent forms to join this case, also assert their individual claims under the IMWL claims pled in this action.

161. At all times relevant to this action, Plaintiff Banks and the California Class performing California Work were employed by (or performing covered work for) Defendant within the meaning of the California Labor Code and applicable Wage Order and performed California Work for Defendant during one or more work weeks that was covered by the California Labor Code, including but not limited to working on a contracted public works jobs within the state of California requiring payment of federal, state or local prevailing wages.

162. The California Labor Code and applicable IWC Wage Order requires employers, such as Defendant, to pay overtime compensation to all covered non-exempt employees.

163. Plaintiff Banks and the California Class were non-exempt employees entitled to be paid proper overtime compensation for all California Work hours worked.

164. During the relevant California Class Period, Plaintiff and the California Class performed California Work in excess of eight (8) hours in a work day and/or 40 hours in a work week for Defendant.

165. During the relevant California Class Period, Defendant failed and refused to pay Plaintiff and the California Class proper overtime compensation at time-and-a-half (or double-time when applicable) a regular rate that included Defendant's fringe benefit amounts paid directly to Plaintiff Banks and the California Class for California Work overtime hours worked.

166. Defendant had a policy and practice of failing and refusing to pay proper overtime pay for California Work to Plaintiff Banks and the California Class for their hours worked.

167. By the course of conduct set forth above, Defendant violated Cal. Labor Code §§ 510, 1194, and applicable IWC Wage Order (for Plaintiff Banks and the California Class). Defendant's violation of these laws was willful.

168. As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiff Banks and the California Class have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendant, prejudgment interest, and attorneys' fees and costs.

**NINTH CAUSE OF ACTION**
**(Failure to Furnish Accurate Itemized Wage Statements under California Law)**
**(Brought On Behalf of Plaintiff Banks and the California Class)**

169. Plaintiff Banks realleges and incorporates by reference paragraphs 1, 3, 12, 14, 18-24, 26-35, 39-41, 44-52, 107-115, and 160-168 as though fully set forth herein.

170. Defendant knowingly and intentionally failed to provide timely, accurate, itemized wage statements including, inter alia, accurate legally required pay rates, to Plaintiff Banks and the California Class for California Work in accordance with Labor Code § 226(a) and the IWC Wage Orders. Such failure caused injury to Plaintiff Banks and the California Class, by, among other things, impeding them from knowing the amount of wages to which they are and were entitled. Plaintiff Banks and the California Class members who did not receive the accurate itemized wage statements referenced in this paragraph within the California Class Period for work covered by applicable California law shall constitute the "California Wage Statement Subclass."

**TENTH CAUSE OF ACTION**
**(Failure to Pay All Wages upon Separation of Employment under California Law)**
**(Brought On Behalf of Plaintiff Banks and the California Class)**

171. Plaintiff Banks realleges and incorporates by reference paragraphs 1, 3, 12, 14, 18-24, 26-35, 39-41, 44-52, 107-115, and 160-168 as though fully set forth herein.

172. California Labor Code §§ 201 and 202 require Defendant to pay covered employees all wages due within the time specified by law. California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

173. At all times during the California Class Period, and, upon information and belief as to the California Class continuing until today, Plaintiff Banks and the California Class who were terminated or separated from their employment from Defendant during the California Class Period were not timely paid all wages due for California Work as required by Labor Code § 203. Defendant's violation of this law was willful. Plaintiff Banks and the California Class members who did not receive these wages due referenced in this paragraph within the California Class Period for work covered by applicable California law shall constitute the "California Separation Wages Subclass."

174. As a consequence of Defendant's willful conduct in not paying proper compensation for all hours worked, Plaintiff Banks and the California Class are entitled to up to thirty days' wages under Labor Code § 203, together with interest thereon, and attorneys' fees and costs.

## ELEVENTH CAUSE OF ACTION
## Unfair Competition under California Law
## (Brought On Behalf of Plaintiff Banks and the California Class)

175. Plaintiff Banks realleges and incorporates by reference Paragraphs paragraphs 1, 3, 12, 14, 18-24, 26-35, 39-41, 44-52, 107-115, and 160-168 herein.

176. The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq. of the Cal. Bus. & Prof. Code prohibits unfair competition by prohibiting, inter alia, any unlawful or unfair business acts or practices.

177. Beginning at a date unknown to Plaintiff Banks, but at least as long ago as the four years preceding the filing date of this lawsuit, Defendant committed acts of unfair competition, as defined by the UCL, by, among other things, engaging in the acts and practices described herein. Defendant's conduct as herein alleged has injured Plaintiff Banks and the California Class by wrongfully denying them earned wages, and therefore was substantially injurious to Plaintiff Banks and the California Class.

178. Defendant engaged in unfair competition in violation of the UCL by violating, inter alia, each of the following laws. Each of these violations constitutes an independent and separate violation of the UCL: Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.; California Labor Code §§ 510 & 1194; and California Labor Code §§ 226.7 & 512.

179. Defendant's course of conduct, acts, and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL. Defendant's conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

180. The harm to Plaintiff Banks and the California Class in being wrongfully denied lawfully earned wages outweighed the utility, if any, of Defendant's policies or practices and therefore, Defendant's actions described herein constitute an unfair business practice or act within the meaning of the UCL.

181. Pursuant to Business and Professions Code § 17200 et seq., Plaintiff Banks and the California Class are entitled to restitution of the overtime and double time earnings and other

unpaid wages alleged herein for California Work that were withheld and retained by Defendant during a period that commences four years prior to the filing of this action, a permanent injunction requiring Defendant to pay required wages, an award of attorneys' fees pursuant to Code of Civil Procedure § 1021.5 and other applicable law, and costs, interest, attorney's fees, and derivative damages and penalties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the putative Collective Members (and Sub-Collective Members), Illinois Class Action Members, and the California Class are entitled to and pray for the following relief:

a. Authorization for prompt issuance of FLSA notice pursuant to 29 U.S.C. § 216(b), to all putative Collective members (including Sub-Collective Members), apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents pursuant to 29 U.S.C. § 216(b);

b. Final certification for collective action trial of this action under the FLSA;

c. Certification of this action as a class action on behalf of Illinois Class Members and California Class Members and prompt issuance of a class notice to all similarly-situated persons, apprising them of the pendency of this action, permitting them to opt-out or to be bound by any judgment in the matter;

d. A declaratory judgment that the practices complained of are unlawful under the FLSA, IMWL, IWPCA, IPWA, and the California Labor Code and applicable IWC Wage Orders;

e. Injunctive relief on the claims brought by currently employed Plaintiffs Harris and Banks rectifying the failure to include fringe benefit amounts paid directly to prevailing wage-paid Workers in the regular rate for calculation of required FLSA, IMWL, California Labor Code and applicable IWC Wage Orders, and state law time-and-a-half (and as applicable, double time) overtime premiums, requiring compliance with the law going forward.

f. An award of unpaid wages and overtime premiums for weeks in which over 40 hours were worked as required under the FLSA, IMWL, California Labor Code and applicable IWC Wage Orders, and other applicable state laws, for underpaid overtime premiums due to excluding fringe benefit amounts from the regular rate, and as to Illinois work on the Walsh Construction projects for all wages not paid free and clear due to "kick-back" payments, (i) in all weeks in which over 40 hours were worked under the FLSA and IMWL, and in all weeks under the IWPCA, IPWA, and the Illinois conversion and unjust enrichment claims (and for Plaintiff Banks and the California Class, in all weeks in which hours in excess of 8 hours in a workday were worked);

g. An award of liquidated damages under the FLSA to the Plaintiffs and Collective Action Members (including Sub-Collective Members) as a result of Defendant's failure to pay for all hours worked in excess of 40 hours in a workweek at a rate of one and one-half times the regular rate of pay, and for failure to pay wages free and clear, pursuant to 29 U.S.C. § 216;

h. An award of damages under the IMWL (and in addition for the Sub-Collective Members, the IWPCA), as applicable based on prevailing wage-paid weeks

worked, including (1) treble the amount of the unpaid overtime and/or illegal deductions; and (2) 5% of the amount of any unpaid overtime and/or illegal deductions for each month following the date of payment during which such unpaid overtime remains unpaid or illegal deductions remain unreimbursed, and under the other applicable state laws in the amounts required by law;

i. An award of damages under the IPWA, as applicable based on prevailing wage-paid weeks worked, including (1) the difference between the amount so paid and the prevailing wage rates provided by the contract; and (2) damages in the amount of 2% of the amount of any Department of Labor penalty owed (for which the Department of Labor is owed 20% of the underpayments) for each month following the date of payment during which the underpayments remain unpaid;

j. An award of all allowable California Class damages and recovery including unpaid wages, premiums, statutory penalties, penalties and interest;

k. An award of damages representing the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

l. Return of all kick-back payments made and punitive damages on the Illinois law conversion claims;

m. Restitution of all kick-back payments made on the Illinois law unjust enrichment claims;

n. An award of prejudgment and post-judgment interest under the FLSA, Illinois law as to the Illinois claims, California law as to the California Class claims, and applicable state law as to the applicable state law claims;

o. An award of Plaintiffs' costs and expenses of this action together with Plaintiffs' reasonable attorneys' and expert fees, and an award of a service payment to Plaintiffs and any other designated representative of the Collective, Sub-Collective, and/or Class(es); and

p. Such other and further relief as this Court deems just and proper.

Dated: July 13, 2026

By: *s/ C. Andrew Head*

C. Andrew Head (admitted pro hac vice)
Bethany Hilbert (admitted pro hac vice)
Head Law Firm, LLC
4422 N. Ravenswood Ave.
Chicago, IL 60640
Tel: (404) 924-4151
Fax: (404) 796-7338
Email: ahead@headlawfirm.com
bhilbert@headlawfirm.com

Drew N. Herrmann
Texas Bar No. 24086523
HERRMANN LAW, PLLC
801 Cherry St., Suite 2365
Fort Worth, Texas 76102
Telephone: (817) 479-9229
Email: drew@herrmannlaw.com

***Attorneys for Plaintiff and the Putative Collective, Illinois Class, the California Class, and Other State Law Classes***

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 13th day of July, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will transmit a Notice of Electronic Filing to counsel of record.

*/s/ C. Andrew Head*
C. Andrew Head